745 So.2d 1221 (1999)
Timothy NAIL, Plaintiff-Appellee,
v.
Marilyn E. CLAVIER, Defendant-Appellant.
No. 99-588.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1999.
Writ Denied January 5, 2000.
*1222 John Edward Fitz-Gerald, for Timothy Nail.
Kathleen Kay, Lake Charles, for Marilyn Clavier.
William J. Cutrera, Lake Charles, for Christopher Nail et al (Children).
BEFORE: DECUIR, AMY and PICKETT, Judges.
DECUIR, J.
This court granted a request for supervisory writs filed by Marilyn Clavier and converted the case to an appeal on all issues. At issue is the custody of the minor children, born to Marilyn Clavier and Timothy Nail, as well as child support and visitation matters.

FACTS
On January 24, 1991, the marriage between Timothy Nail and Marilyn Clavier ended in a divorce granted by order of the District Court, County of Larimer, State of Colorado. Stating explicit reservations about the abilities of either party to provide adequate parenting, the Colorado court granted custody of Christopher, born December 9, 1986, and Ashley, born January 25, 1988, to Marilyn Clavier. In addition, the court granted Clavier's request to move the children to Louisiana. Nail was granted one extended weekend visitation per month in Louisiana, one week for spring break, two weeks for the summer of 1991, four weeks for the summers of 1992-1994, and six weeks per summer thereafter and alternating holidays. The court also ordered Nail to pay $390 per month in child support while the children remained in Colorado. Three months after the children moved to Louisiana support was to be reduced to $280 per month in consideration of travel costs.
Clavier and the children subsequently moved to Sulphur, Louisiana. Some time later Nail moved to Louisiana as well. Despite explicit prohibitions on contact between the parties contained in the Colorado divorce decree, Nail and Clavier managed contact intimate enough to produce another child. Kristen was born on December 27, 1993. After Kristen's birth, the family continued the tumultuous life of violence, substance abuse and general disarray which had previously characterized the marriage. Nail stayed with the family for extended periods, though he maintained a separate residence. The latest of these extended stays ended on July 10, 1997 when Clavier asked Nail to leave. He ultimately did so, taking the children for his visitation. The parties dispute the intended length of that visit. In any event, on July 13, 1997, Nail and the children went by Clavier's home, allegedly to retrieve Christopher's retainer. Exactly what transpired is unclear, but Clavier arrived in an intoxicated state and ended up locked in the house with the children. Nail contended that she was refusing to let the children leave and, therefore, he called the police. The police arrived and after a *1223 heated argument with the officer, Clavier was detained by force and placed under arrest. All of this transpired in the presence of the children.
On July 21, 1997, Nail filed a petition for change of custody. On July 30, 1997, Clavier answered and sought additional relief. A hearing was held on July 31, 1997 and custody of the children was transferred by the court to Harbour House. On August 12, 1997, the court appointed William Cutrera guardian ad litum for the children, ordered child support by both parties, and issued a second interim order transferring custody to Bill and Lisa Elder, Clavier's sister and brother-in-law. Citing difficulty dealing with Clavier's behavior during and surrounding visitation and the general turmoil created in their family, the Elders requested a transfer of custody. On October 31, 1997, a hearing was held and custody was transferred to Elaine and Sally Nail, Nail's grandmother and mother. Nail's mother lived in Colorado but agreed to move to Louisiana to care for the children. The children have been in her custody since that time. Nail and Clavier were granted two hours of supervised visitation per week by the trial court.
Trial of the matter began on December 17, 1998. On March 25, 1999, the curator for the children filed an answer asking the court to place the children "with a person or persons, whether parent or a non-parent, in accordance with their best interest." At the completion of the trial, the court determined that the best interest of the children could only be met by awarding Sally Nail sole custody of the children. The court also allowed Sally Nail to return to Colorado with the children. The court denied visitation to both Nail and Clavier pending completion of counseling for emotional problems, anger management, domestic violence issues, and alcohol and drug abuse. In addition, the court ordered each party to pay $224.00 in child support, $50.00 of which is to be forwarded to the curator, William Cutrera, in compensation for his services.
Clavier filed a motion of intent to apply for supervisory writs and to stay the proceedings. The trial court stayed the proceeding pending the outcome of the writ but refused to prevent the children from leaving the jurisdiction. On May 17, 1999, this court granted the writ and converted it to an appeal. Clavier's request to prohibit the removal of the children from the jurisdiction was denied.

AWARD OF CUSTODY TO NON-PARTY
Clavier first asserts that the trial court erred in awarding custody to Sally Nail because she did not petition for custody and is not a party to the suit. We disagree.
Clavier relies on Hall v. Hall, 367 So.2d 162 (La.App. 2 Cir.1979) in support of her contention. After reviewing Hall, we conclude that it does not stand for the proposition that custody may not be awarded to a non-party. Rather, Hall holds that where the proper standard of proof regarding the parents' conduct has not been met, custody cannot properly be awarded to a nonparent especially if that non-parent is not a party.
Accordingly we have reviewed the jurisprudence for more persuasive authority. In Roller v. Roller, 213 So.2d 161 (La.App. 3 Cir.1968), this court held that the technicality that the grandmother was not a named party did not deprive the trial court of the discretion to award custody to her. In Stuckey v. Stuckey, 276 So.2d 408, 411 (La.App. 2 Cir.1973), the court noted that Roller stated "a sound rule which allows the trial court the necessary flexibility to do what is necessary in the best interest of the child." Likewise, our brethren of the fourth circuit held specifically, "[g]rand-parents of a minor child need not be parties to an action for child custody in order for custody to be awarded to them." Schloegel v. Schloegel, 584 So.2d 344, 348 *1224 (La.App. 4 Cir.1991). Accordingly, we find no merit in this assignment.

NECESSITY OF INVOKING JUVENILE AUTHORITY
By her next two assignments, Clavier contends that an exercise of its juvenile jurisdiction is the only means by which a court may award custody to a non-parent and that under the Children's Code the court may only exercise this authority upon petition by the District Attorney. We disagree.
Clavier cites Hall, 367 So.2d 162, and Mertens v. Mertens, 308 So.2d 508 (La. App. 3 Cir.), writ denied, 313 So.2d 240 (La.1975), in support of her contentions. A cursory examination of these cases reveals that they do not purport to limit the power of the trial court to an exercise of its juvenile authority. Instead, both cases involve situations where the trial court did not find the requisite proof under the custody provisions nor could the court properly exercise its juvenile authority.
We find this case to be governed by La.Civ.Code art. 133 which provides that upon finding that an award of custody to "either parent would result in substantial harm to the child, the court shall award custody to another person" who has been or can provide a stable environment. This statute vests the court with all the authority necessary for the judgment in this case. There was no need for the court to exercise its juvenile authority. Accordingly, these assignments lack merit.

FAILURE TO REFER TO DEPARTMENT OF SOCIAL SERVICES
Clavier next contends that the trial court erred in awarding custody to a nonparent rather than referring the matter to the Department of Social Services as provided in La.Ch.Code art. 308. We disagree.
La.Ch.Code art. 308 provides:
A. Whenever any court of this state in the trial of any proceeding has cause to believe that a child's physical or mental health or welfare is endangered by abuse or neglect, it may report or refer the charges to the local child protection unit of the Department of Social Services in accordance with Article 610. [Emphasis added.]
The language of the article is clearly permissive rather than mandatory. The trial court had the option to refer the matter to the Department of Social Services, but was not required to do so. Moreover, in this case, the testimony of both parties reveals that the Department of Social Services had already investigated on more than one occasion. Accordingly, this assignment has no merit.

CONSIDERATION OF EVIDENCE OUTSIDE THE RECORD
By this assignment, Clavier contends the trial court erred by considering evidence not in the record in making its determination. Specifically, Clavier objects to the trial court's consideration of reports from the Office of Community Services regarding allegations of abuse and neglect, and reliance on interviews conducted with the children.
Clavier is correct in asserting that "a finder of fact cannot consider evidence outside the record in making its findings." Burdis v. Lafourche Parish Police Jury, 618 So.2d 971, 976 (La.App. 1 Cir.), writ denied, 620 So.2d 843 (La.1993). She is also correct in noting that the trial court did not admit the Office of Community Services reports into the record. Moreover, it is clear from the trial court's reasons that it improperly attributed its findings to evidence adduced from these reports. However, after careful review of the record in its entirety, we conclude the error on the part of the trial court was harmless. The evidence which the trial court attributed to the OCS reports is established in the record by other sources, including but not limited to the testimony of both parties.
*1225 We reach the same conclusion with regard to the evidence purportedly adduced from the interviews with the children conducted by the court. The record clearly establishes the same evidence from other sources, most notably the testimony of the children's psychologist. Accordingly, we need not determine whether the trial court adhered to the proper formalities in interviewing the children. This assignment lacks merit.

INSUFFICIENT EVIDENCE OF SUBSTANTIAL HARM
By this assignment, Clavier contends that the trial court lacked clear and convincing evidence that substantial harm would be caused to the children by retaining them in her custody. In support of this position, she relies in part on the assumption that this court would exclude the evidence discussed in the previous assignment. Though we did not exclude that evidence, we will nevertheless consider the merits of this assignment.
A trial court is vested with much discretion in making a determination of child custody, and the court's decision will not be disturbed absent a clear showing of abuse of discretion. Everett v. Everett, 433 So.2d 705 (La.1983). This court has held that in order for custody to be awarded to a non-parent "substantial harm" to the children must be established by clear and convincing evidence. Creed v. Creed, 94-268 (La.App. 3 Cir. 12/21/94); 647 So.2d 1362. In the instant case, the trial court had clear and convincing evidence to make a determination that an award of custody to either parent would result in substantial harm to the children. The record reflects that both Nail and Clavier have volatile tempers as well as problems with drug and alcohol abuse. Clavier admitted cursing the children and pulling her daughter's hair. Clavier also admits stealing a tape of interviews conducted by OCS with the children. The record suggests that she used the tape to threaten and intimidate the children. Moreover, though the OCS reports are not part of the record, Clavier acknowledged that the OCS investigated on numerous occasions and found the claims substantiated in some instances. Likewise, in the incident giving rise to this custody dispute, Clavier essentially held the children hostage in her home until the police arrived and then in the presence of the children became violent with the police officer forcing her arrest.
In 1991, the Colorado court awarded custody to Clavier acknowledging that it was largely a choice of the lesser of two evils. Because of that he ordered specific counseling for Clavier. Clavier did not comply with that court order. Dr. Post, the psychologist who evaluated the parties for the court, concluded that Clavier uses poor judgment and engages in risky behavior. Ultimately, Dr. Post concluded that both parents have significant mental health problems.
Scott Reviere, the children's psychologist indicated accounts by the children of physical and verbal abuse. He also testified that the children recounted an episode where Clavier threatened to drive off an interstate bridge with all of them. Moreover, the children described in graphic detail numerous occasions of Clavier and various men engaging in sexual situations in the presence of the children.
Though Nail does not contest the award of custody, we note for the record that his actions are equally repugnant. He has a recurring problem with alcohol and drug abuse as well as an extensive criminal record. Moreover, the evidence reveals that neither party can manage to avoid interpersonal conflict with the other. Despite, their volatile history and court orders to avoid contact, the seem unable to do so. Under these circumstance, we find no abuse of discretion in the trial court's conclusion that there is clear and convincing evidence that an award of custody to either parent would result in substantial harm to the children.

*1226 BEST INTEREST OF THE CHILDREN
Clavier contends the trial court was manifestly erroneous in concluding that it was in the best interest of the children to award custody to Sally Nail. We disagree.
The record before us is clear on one point, if no other. Sally Nail is the only person involved in this unfortunate situation who has demonstrated her willingness to put the interests of these children before her own. Sally Nail moved from her home in Colorado and came to live with her mother-in-law so that these children could have a stable home life. She enrolled the children in counseling at her own expense. She complied with court ordered visitation for the parents to the best of her ability despite often difficult and hostile circumstances. She facilitated the children's participation in extra-curricular activities and involved the children in church activities. She has done this on a consistent basis since November 1997, when Clavier's sister relinquished temporary custody due to the disruption caused by the children and visitation with Clavier.
Accordingly, we find no manifest error in the trial court's determination that the award of custody to Sally Nail is in the best interest of the children. On the record before us, that conclusion is manifestly obvious.

VISITATION AND CHILD SUPPORT HEARING
By these assignments, Clavier contends that the trial court erred in refusing to allow her visitation with the children and in ordering her to pay child support without a hearing. We disagree.
The basis of Clavier's contention is that she was not given proper opportunity to be heard. Clavier cites no authority for the proposition that a separate hearing on visitation or child support must be held apart from the custody hearing and we find no such authority. The record is clear that Clavier had adequate notice that these matters were at issue. Clavier had adequate opportunity to be heard during the custody hearing. This assignment has no merit.

MOVE TO COLORADO
By this assignment, Clavier contends the trial court erred in allowing the children to be moved to Colorado, because it is tantamount to termination of her access to the children. We disagree.
For the reason stated above, Clavier's contention that she did not have an opportunity to be heard on this issue lacks merit. With regard to a move to Colorado being tantamount to a termination of access, we note that the denial of visitation terminated access, not the move to Colorado. In the event Clavier complies with the court order and regains visitation, we see no reason she cannot go to Colorado. Clavier has no consistent job history, she has lived in Colorado previously, and has argued nothing but her own poverty prevents her from leaving Louisiana. Moreover, the trial court has not ruled on transportation of the children in the event visitation is ordered. Until the court does so, Clavier's complaints are premature. This assignment has no merit.

CURATOR'S FEES AS CHILD SUPPORT
By her final assignment, Clavier contends that the trial court erred in awarding fees owed to the court appointed curator as child support. We disagree.
La.R.S. 9:345 authorizes the trial court to apportion the cost of an attorney appointed in a child custody case as it deems just. La.R .S. 9:315.1 allows the trial court to deviate from the support guidelines for any reason that makes the application of the guidelines not in the children's best interest. In the present case, the attorney appointed as curator is owed fees in the amount of $15,524.75 which the trial court charged equally to both parties payable in installment of $50.00 per month *1227 as part of their respective child support obligation.
We find that this allocation of payments is within the trial court's discretion. Moreover, the deviation from the guidelines is in the best interest of the children because the curator is entitled to payment and a lump sum award would likely impair the parents ability to pay child support or result in bankruptcy. If it resulted in bankruptcy the curator's fees would likely remain a charge on the children's estate as they were incurred for the children's benefit. Neither, of these alternatives serves the interests of the children. It is noteworthy, that the curator does not complain of a judgment that stretches his payment over a period of more than ten years without interest. We commend his evident concern for these children evidenced by his work in the case and his patience. For the reasons stated, we find no error in the trial court's award.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to appellant, Marilyn Clavier.
AFFIRMED.
AMY, J., concurs.
PICKETT, J., dissents and assigns reasons.
PICKETT, Judge, dissents.
I respectfully dissent.
The majority finds the trial court did not err by awarding custody to an individual who did not petition for custody and who is not a party to the suit. I respectfully disagree with the majority's analysis of the jurisprudence upon which they rely in reaching their conclusion. Each case relied upon by the majority can be distinguished from the case presently before the court.
I agree with the conclusion of the majority that the court's holding in Hall v. Hall, 367 So.2d 162 (La.App. 2 Cir.1979) does not stand for the proposition that custody may not be awarded to a non-party. Hall was reversed on other grounds pertaining to the proper standard of proof regarding the parents.
However, in Roller v. Roller, 213 So.2d 161 (La.App. 3 Cir.1968) the father of the children at issue had petitioned the court to have the custody of his children removed from their mother and specifically requested they be places in the custody of his parents.
In Stuckey v. Stuckey, 276 So.2d 408 (La.App. 2 Cir.1973) the father of the minor child, in answer to the defendant's recoventional demand, alleged she was an unfit mother, and because he was incarcerated, alleged custody should be granted to his parents who already had physical custody of the child. That court cited Roller v. Roller in determining it was not essential that the grandmother be a party to the action, finding the rule in Roller allowed the trial court the necessary flexibility to do what is in the best interest of the child.
In Schloegel v. Schloegel, 584 So.2d 344 (La.App. 4 Cir.1991) the maternal grandmother, to whom the court granted physical custody, had actually been named as a party-defendant by the father in the rule for custody.
In each of the above cases the parents were on notice that the grandparents were actually a party to whom custody might ultimately be given. They had the opportunity to conduct discovery and to question the grandparents as to their fitness. They had the opportunity to call witnesses who might have pertinent information regarding the grandparents.
In the matter before this court, the parents had no such notice. This matter proceeded entirely as a matter between mother and father. Although the children had been placed with the paternal grandmother pending litigation, there was no suggestion, based on the record before this court, *1228 that the arrangement was anything but temporary.
Fundamental fairness requires the parents be put on notice of the actual parties at interest. Unlike the cases cited above, the grandmother was never, in any of the pleadings, presented as an individual in whom custody might ultimately be placed. I respectfully maintain that this is necessary in order for the matter to be fully and fairly litigated.
In addition, the majority finds that while the trial court improperly attributed its findings to evidence adduced from Office of Community Services (OCS) records and unrecorded interviews with the children by the court, the error on the part of the trial court is harmless. The majority reaches a conclusion of harmless error by determining the same information contained in the OCS reports and the interviews came into evidence by other means, namely, the testimony of the parties and that of the children's psychologist.
I disagree with the majority in all respects as to this issue.
The trial court clearly relied on evidence outside the record in making its findings. This is improper in and of itself.
Moreover, the trial court reviewed and relied on reports compiled by the Office of Community Services, which are strictly confidential in nature.
La.R.S. 46:56 sets forth the rules and regulations which pertain to the confidentiality of the OCS case records. La.R.S. 46:56(H) sets forth penalties that may be imposed for any person violating the provisions of this statute. This suggests strict adherence to those provisions. La.R.S. 46:56(H) provides the method by which these records and reports may be used in civil litigation, such as is before this court, and provides the standard for determining whether testimony by a department employee may be permitted.
There is no indication in this record of compliance with the mandatory provisions of La.R.S. 46:56.
Unrecorded interviews of the children in chambers likewise cannot be considered harmless error. It has long been recognized that an "in chambers" interview of a minor child is appropriate in a matter involving a custody dispute. It is required, however, that the interview must be conducted with a reporter present and a record made of the questioning by the court and the answers of the witnesses. Dykes v. Dykes, 488 So.2d 368 (La.App. 3 Cir.), writ denied, 489 So.2d 1278 (La.1986); see also Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5 Cir.), writ denied, 464 So.2d 301 (La.1985).
The trial court's failure to follow the proper procedure in conducting the "in chambers" interviews makes it impossible for this court to properly review the entire record in this matter.
As we do not know what information was contained in the OCS reports, and as we are unable to review the testimony of the children because there is no record, we cannot know if the information the court improperly considered was in fact placed in evidence by other means, as the majority concludes. This cannot be considered harmless error.
Accordingly, I would reverse the ruling of the trial court which placed sole custody of the children in the grandmother and terminated all contact by the parents, allowing her to move out of state with the minor children. I further suggest this matter be remanded to the trial court for the purposes of an adversarial hearing between the appellant mother and the paternal grandmother.
DISSENTS.