## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1355


MICHAEL S. MILLER

VERSUS

JENNIFER L. MILLER


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2004-0211B
HONORABLE HERMAN I. STEWART, DISTRICT JUDGE

**********

**OSWALD A. DECUIR**
**JUDGE**

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**Pickett, J., dissents and assigns reasons.**

                                                      **AFFIRMED.**


**David L. Wallace**
**Attorney at Law**
**P. O. Box 489**
**DeRidder, LA 70634**
**(337) 462-0473**
**Counsel for Defendant/Appellant:**
      **Jennifer L. Miller**

**C. Kerry Anderson**
**Attorney at Law**
**P. O. Box 1025**
**DeRidder, LA 70634**
**(337) 463-2100**
**Counsel for Appellee:**
      **A. M.**

**E. David Deshotels, Jr.**
**Deshotels, Mouser & Deshotels**
**P. O. Box 399**
**Oberlin, LA 70655**
**(337) 639-4309**
**Counsel for Plaintiff/Appellee:**
     **Michael S. Miller**

**DECUIR, Judge.**

This appeal arises from a dispute over the legal custody of Dakota Miller, the minor son of Michael Miller and Jennifer Driskill Miller. The trial court found substantial harm would result if custody were awarded to either parent; therefore, the court granted custody to the child's paternal grandparents, Malcolm and JoAnn Miller. Jennifer has appealed the decision of the trial court. Michael disagrees with the factual findings of the trial court but does not contest the award of custody. For the reasons assigned below, we affirm.

Michael and Jennifer met over the internet. She was sixteen years old and had just completed her junior year of high school when her grandparents allowed her to travel from their home in Oklahoma to Louisiana to spend a week with Michael and his parents.[1] Michael was in his early twenties at the time. It appears from the testimony that he was unable to drive long distances because of a seizure disorder. Michael and Jennifer began a sexual relationship, and by the time she returned home from her second visit to Louisiana, she was pregnant. The couple married in June of 2002, four months after their son, Dakota, was born.[2]

The evidence in the record shows, and Jennifer admitted, that she began an affair with another man a few months after she and Michael were married. She became pregnant a second time and had an abortion which she testified she was forced to do by Michael. Her third pregnancy resulted in the birth of a daughter, Cheyenne, who Michael sought to disavow. Relying on DNA evidence which showed a 0% probability of paternity, the trial court granted Michael's petition to disavow, and that ruling has not been appealed.

---

[1] Jennifer was raised by her grandparents from the time she was six years old. Her mother is serving a life sentence for murder, in California, and her father was released from prison in December of 2003, after serving time for a felony drug conviction.

[2] Prior to their marriage, Jennifer finished high school in Oklahoma.

Both parties described in their testimony a violent and tumultuous relationship. They fought physically, as well as verbally, over issues such as housekeeping, internet pornography, and Jennifer's relationships with other men. Michael's mother testified as to their chaotic home life, while Jennifer's grandmother corroborated the fighting that went on between the two. Ultimately, the couple separated in February of 2004, when Jennifer left with the children while Michael was at work, and she returned to her grandparents' home in Oklahoma.

Since the time of the parties' separation, Michael sent $40.00 for their child's support and once bought diapers for both children. There was testimony that Jennifer sent Dakota to Louisiana for a scheduled visitation and the Millers found fleas in his hair. The trial court concluded that placing the child in the custody of either parent "would place him in an unsafe environment with a real physical danger and an extremely questionable moral environment." After questioning JoAnn and Malcolm Miller, the trial court referred to Article 133 of the Louisiana Civil Code and determined that it had the authority to place the child with "any other person able to provide an adequate and stable environment."

The record before us reflects great immaturity on the part of both Jennifer and Michael. Their moral choices, violent tempers, and disregard for their responsibilities as parents, as well as Michael's seizure disorder, caused the trial court to find them both unfit to raise their child. Nevertheless, Jennifer contends in this appeal that the court was without authority to grant custody to the Millers, who are not parties to the litigation and have not sought custody. She also contends the trial court erred in effectively granting custody to Michael, since he lives with his parents, and in failing to grant visitation.

We find the trial court's decision to be well supported by both the evidence in the record and legal authority. Article 133 of the Civil Code clearly authorizes a court

2

to award custody to a non-parent in order to prevent "substantial harm to the child." Similarly, there is jurisprudential history for awarding custody to a grandparent who has not petitioned for custody and who is not a party to the suit. *See Nail v. Clavier*, 99-588 (La.App. 3 Cir. 11/10/99), 745 So.2d 1221, *writ denied*, 99-3494 (La. 1/5/00), 752 So.2d 169, *and cases cited therein.* Accordingly, we find no manifest error in the trial court's determination that an award of custody to JoAnn and Malcolm Miller is in the best interest of the child, Dakota Miller. The fact that Michael lives with his parents, and thus would also be living with Dakota, is of no moment.

On the issue of Jennifer's visitation rights, we note the trial court specified only "reasonable visitation" in its judgment. The trial transcript indicates the court instructed the parties to work out a visitation schedule among themselves and, if they could not agree, then they should return to court for a determination of visitation. The trial court has great discretion in determining visitation rights, and we find no error in the court's decision to require the parties to work together on a schedule agreeable to all before making a judicial pronouncement on such a logistically complicated matter.

For the foregoing reasons, we affirm the judgment rendered by the trial court. Costs of this appeal are assessed to Jennifer Driskill Miller.

**AFFIRMED.**

3

NUMBER 04-1355

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

MICHAEL S. MILLER

VERSUS

JENNIFER L. MILLER

**Pickett, Judge, dissenting.**

For the same reasons I expressed in my dissent in *Nail v. Clavier*, 99-588 (La.App. 3 Cir. 10/10/99), 745 So.2d 1221, 1227, *writ denied*, 99-3494 (La. 1/5/00), 752 So.2d 169, and as more fully expressed below, I respectfully dissent from the majority opinion.

My primary objection in *Nail*, and in the instant case, is that the grandparents to whom custody was awarded were not parties to the suit, and the actual parties were never given an opportunity to fully and fairly examine them to make a determination of fitness. I fully recognize the authority of the trial court to award custody to a non-parent. La.Civ.Code art. 133. I also understand the inclination to deny custody to either the mother or the father in this case. I believe the trial court, once it determined that it was not in the best interest of the child to award custody to either parent, should have put the parties on notice that it would place the child with the grandparents *after a contradictory hearing to determine their fitness*. I cannot support a precedent whereby the trial court, on its own motion and without holding a hearing, can award custody to a non-party.