## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
## 15-972
## consolidated with 15-973


**ALEX ARDOIN**

**VERSUS**

**JASMINE GRICE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 73955-A C/W 75327-B
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and John E. Conery, Judges.


**VACATED IN PART, REVERSED, AND RENDERED.**

Jonathan W. Brown
Attorney at Law
1025 Mill Street
Lake Charles, Louisiana  70601
(337) 564-6990
COUNSEL FOR DEFENDANT/APPELLANT:
    Jasmine Grice

Alex Ardoin
Avoyelles Parish Prison
675 Government Street
Marksville, Louisiana  71351
Pro se:
    Alex Ardoin

Juanita Jack
109 4th Street
Mamou, Louisiana  70554
Pro se:
    Juanita Jack

**CONERY, Judge.**

This case exemplifies what can happen when an error of law early on in a case interdicts and colors the entire fact finding process in a civil custody trial. Such an error in this case allowed a putative father, a convicted felon, to obtain an invalid ex parte order of custody of a daughter he had had not seen for all of the six years of her life. That order then formed the basis of an arrest of the minor child's mother on two occasions for attempted simple kidnapping as she attempted to regain custody of her daughter.

At an eventual custody trial some two years later, one of the factors that most influenced the trial court's decision was that the mother had not seen her child in over two years. The child had been well cared for by her paternal grandmother. The trial court then awarded custody to the non-party paternal grandmother, who had also obtained what turned out to be an invalid ex parte custody order.

Ms. Jasmine Grice, the mother, timely appealed the trial court's custody ruling on the merits in favor of the non-party paternal grandmother, Ms. Juanita Jack, alleging two assignments of error:

1. The trial court erred in failing to conduct the two-pronged test required before a natural parent is denied custody and the child is placed with a non-parent.

2. The trial court erred in placing the child with a non-parent who is not a party to the suit without first finding that Ms. Grice did not meet the proper standard of proof regarding her conduct.

Because we find that the errors of law in awarding ex parte custody to the father and the paternal grandmother interdicted the entire fact finding process, and that the trial court made a further error of law in placing the burden of proof on the mother and failing to place the heavy burden of proof on the nonparent

grandmother in accordance with La.Civ.Code art. 133, we review this case de novo, reverse the award of custody to Ms. Jack and award custody of the minor child to Ms. Grice.[1]

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this case, as well as its procedural history, involve the custody of the minor child, I.A.,[2] making it necessary to discuss the history of this dispute from I.A.'s birth on March 19, 2007. Ms. Grice and Mr. Alex Ardoin had a relationship when Ms. Grice was only sixteen years old. Ms. Grice became pregnant during that relationship, but Ms. Grice and Mr. Ardoin separated before I.A.'s birth. Ms. Grice met Mr. Christopher Flowers when she was pregnant and married him on January 7, 2007, before I.A.'s birth.[3] The child's birth certificate is not in evidence and it is not known whether Mr. Flowers signed I.A.'s birth certificate as the father. There is no direct testimony that Mr. Ardoin in fact is the biological father of I.A. Ms. Grice did testify that the state previously filed criminal non-support charges against Mr. Ardoin, in Calcasieu Parish, but he was

---

[1]The Louisiana Supreme Court in *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731, 735, stated (citations omitted):

> Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*.

[2]Pursuant to Uniform Rules—Courts of Appeal, Rules 5-1 and 5-2, the initials of the minor child will be used to protect and maintain the privacy of the minor child involved in the proceeding.

[3]Since I.A. was born during the marriage of Ms. Grice and Mr. Flowers, he is the presumptive father pursuant to La.Civ.Code art.185, which provides, in pertinent part, "The husband of the mother is presumed to be the father of a child born during the marriage." However, he has not attempted to claim paternity, and because Ms. Grice judicially admitted that Mr. Ardoin was the biological father of I.A. in her custody proceeding, we have determined that Mr. Flowers is not a necessary and indispensable party to this litigation. La.Code Civ.P. art. 641.

never served.[4]  In her eventual custody suit against Mr. Ardoin, Ms. Grice did allege that Mr. Ardoin was I.A.'s biological father.[5]

At the time of the events leading up to this custody dispute, Ms. Grice (now Mrs. Flowers)[6] and Mr. Flowers lived in Lake Charles, Louisiana with I.A., who had resided with Ms. Grice and Mr. Flowers her entire life.  Ms. Grice and Mr. Flowers had four additional children during their marriage, and the custody of those children is not dispute in these proceedings.

In January 2013, when I.A. was almost six, Ms. Grice entered the hospital for surgery and entrusted I.A. to the care of her mother Angela Grice, I.A.'s maternal grandmother.  Ms. Grice's mother also fell ill, and it became necessary to temporarily place I.A. in the care of I.A.'s maternal great-grandmother, Ms. Brenda Allen.  No formal transfer of custody was executed as the placement was expected to be of short duration until Ms. Grice recovered from surgery.[7]

Ms. Allen, without the permission of Ms. Grice, and without her knowledge or consent, then transported I.A. to Mamou, Louisiana, in Evangeline Parish, to visit Ms. Allen's sister, Ms. Corina Jack.  Mr. Ardoin was in the yard next door.

---

[4]Ms. Grice claimed that she provided four addresses for service.  Certified copies of those proceedings were not in the record on appeal.  Thus, no trial court has ever held a custody hearing to determine custody, visitation, or child support issues involving I.A.

[5]Ms. Grice's petition for custody docketed as 75,327-B stated, in pertinent part, "The parties were never married. . . . One child was born between the parties, I.A., born March 19, 2007." The parties also do not dispute that I.A. has Mr. Ardoin's surname.  However, the record contains no documentation that Mr. Ardoin has ever formally acknowledged I.A. as his biological child.  La.Civ.Code art 245 (Vacated effective January 1, 2016).

[6]Ms. Grice testified that she uses her maiden name, Grice, and she will be identified as "Ms. Grice" throughout this opinion.

[7]Louisiana Children's Code Articles 1510-1520 provide the procedures for the temporary transfer of custody of a minor child to a nonparent in cases where the child is placed for extended periods of time.

Ms. Allen allowed I.A. to visit with Mr. Ardoin, this in spite of being admonished by Ms. Grice not to allow I.A. to see her alleged biological father. [8]

Mr. Ardoin then requested of Ms. Allen that he be allowed to take I.A. to see his mother, Ms. Jack. Ms. Allen granted permission to Mr. Ardoin, but advised that she and I.A. had to leave and he would need to return I.A. soon. Mr. Ardoin did not return I.A. to Ms. Allen on the day in question and has steadfastly refused to do so since, as has Ms. Jack. I.A. has been living with Mr. Ardoin, and/or with Ms. Jack, since January 2013.

At the eventual custody hearing held on July 27, 2015, the trial court stopped Ms. Allen from giving any further testimony about the reason I.A. was never returned to Ms. Allen and Ms. Grice in January 2013. A review of the record shows only that on February 26, 2013, Mr. Ardoin filed an unverified civil "PETITION FOR CUSTODY HEARING," seeking sole custody of I.A. and to be appointed domiciliary custodian of I.A., claiming that Ms. Grice "left the child with her father and never returned to pick her up." The petition made other unverified claims against Ms. Grice concerning her lifestyle and alleged her general neglect of I.A., this notwithstanding that Ms. Grice had been married to Mr. Flowers, and, together with him, had been raising I.A. with no problems for six years, along with their four additional children. The civil petition was docketed as case number 73,955-A and a rule to show cause was set for April 26, 2013.

The temporary custody order attached to the petition stating, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioner, ALEX ARDOIN, is granted joint custody with domiciliary status until this matter is fully

---

[8]Ms. Grice testified at trial that Mr. Ardoin had been in and out of jail and was a bad influence on her daughter. Criminal non-support proceedings were pending against him in Calcasieu Parish, but the State had been unable to obtain service on Mr. Ardoin.

adjudicated[,]" was scratched through and in the margin of the order is a handwritten statement initialed by the district judge which stated, "Petition does not meet Ex parte order requirements[.]" Thus the initial ex parte request by Mr. Ardoin to have temporary custody of I.A. was **denied**. The service instructions requested service on Jasmine Grice at 1607 North Simmons Street, Lake Charles, Louisiana 70601, which was her grandmother, Ms. Allen's address, not hers.

The first legal error occurred on March 26, 2013, when the trial judge signed an ex parte order prepared by Mr. Gilbert J. Aucoin, Mr. Ardoin's attorney, placing custody of I.A. with Mr. Ardoin. Such an ex parte order, filed without a verified amended petition in compliance with La.Code Civ.P. art 3945, is an absolute nullity, as will be more fully discussed below. This purported "juvenile court" order was also a complete nullity, as there was no juvenile court jurisdiction, discussed more fully below.

In any event, Ms. Grice was never served with Mr. Ardoin's February 26, 2013 petition seeking sole custody of I.A. and had no knowledge of the attached order setting the custody hearing for April 26, 2013. Likewise, she was not served with the March 26, 2013 ex parte custody order.

Supplemental service information, now in the record before us, confirms that service of Mr. Ardoin's February 26, 2013 petition for sole custody and the order setting the hearing on the petition for April 26, 2013, was attempted by the Calcasieu Parish Sheriff's Office on March 6, 2013, at 1607 North Simmons Street, Lake Charles, Louisiana 70601, but not perfected, on Ms. Grice. The service information stated, "Don't Live There."

Ms. Allen verified at the eventual custody hearing on July 27, 2015, that **her** address was 1607 North Simmons Street, Lake Charles, Louisiana 70601, and that

Ms. Grice had never resided at her home on North Simmons Street. Ms. Grice likewise testified at that custody hearing that she had never received notice of the initial February 26, 2013 civil petition filed by Mr. Ardoin. At the time of the attempted service, she resided with Mr. Flowers and their five children in a townhouse located at 1013 Joe Street, Lake Charles, Louisiana 70106, the same location at which I.A. was living with Ms. Grice, Mr. Flowers, and I.A.'s siblings before Mr. Ardoin took custody from Ms. Allen and Ms. Grice without proper legal authority.

The March 26, 2013 ex parte "Order Granting Custody," included the language making I.A. "a ward of the court," and awarded sole custody of I.A. to Alex Ardoin. The Order is captioned "STATE OF LOUISIANA IN THE INTEREST OF I.A. D.O.B. MARCH 19, 2007[,]" and bears docket number 73,955-A, the same number as Mr. Ardoin's civil "Petition For Custody Hearing." That ex parte order was presented to the trial court by "GILBERT J. AUCOIN, ATTORNEY FOR ALEX ARDOIN." The March 26, 2013 ex parte custody order of I.A. to Mr. Ardoin states, in pertinent part:

> In this cause by reason of the Court having exercised its authority in the name of **I.A.** and having taken said child into its protective custody as a ward of the Court, the law being in favor thereof: **I.A.** be and the same is hereby placed in the custody of **ALEX ARDOIN, father, whose present mailing address is 109 4th STREET, MAMOU, LOUISIANA 70554** and to be kept within the jurisdiction of this Court until further order of this Court.

The record on appeal does not contain a motion and order setting a hearing for March 26, 2013, and does not contain a minute entry of any hearing held on that date. The service information on the order shows only "c/c to Gilbert J. Aucoin 3-26-13," and what appear to be the initials of a clerk of court. The record

contains no service or attempted service to Ms. Grice of the March 26, 2013 ex parte custody order granting Mr. Ardoin the custody of I.A.

The March 26, 2013 ex parte custody order, with the civil case docket number 73,955-A, was signed even though the trial judge had correctly denied the original ex parte order filed with the petition. There is no indication in the record that the March 26, 2013 ex parte custody order was filed on behalf of the State, the Department of Children and Family Services (DCFS), or that the district attorney was served or notified pursuant to law of any alleged "abandonment" or "abuse or neglect" of I.A. by Ms. Grice as required by La.Ch.Code art. 308.[9] The March 26, 2013 ex parte custody order however, resulted in Ms. Grice, her sister Charmaine Grice, and her mother Angela Grice being arrested for attempted simple kidnapping while attempting to regain custody of I.A. in Evangeline Parish on March 28, 2013.

The record shows that two bills of information dated June 24, 2013 were filed by the district attorney of Evangeline Parish charging Ms. Grice and her sister with one count of "Attempted [] Simple Kidnapping, La. R.S. 14:45[,]" on March 28, 2013.[10]

---

[9]Louisiana Children's Code Article 308 provides:

> A. Whenever any court of this state in the trial of any proceeding has cause to believe that a child's physical or mental health or welfare is endangered by abuse or neglect, it may report and refer the charges to the local child protection unit of the Department of Children and Family Services in accordance with Article 610.

> B. If from its investigation the department determines that the report is validated or if it has obtained an instanter order from the juvenile court, it shall file appropriate written notice in the civil proceeding in which the complaint arose. Thereafter, the juvenile court shall have jurisdiction to resolve the case as a child in need of care proceeding pursuant to the provisions of Title VI.

[10]The bills of information were submitted into evidence by Ms. Grice at the July 27, 2015 custody hearing as "I.A.-2 in globo.

Ms. Grice testified at the July 27, 2015 custody hearing that, as a result of her arrest while attempting to regain the custody of her daughter, she was warned by her then attorney and someone from the district attorney's office not to make any further contact or attempt to see I.A. Additionally, she claimed that her attorney advised her that she should delay any legal efforts to regain custody of I.A. until the criminal charges against her were resolved.[11]

In the meantime, on April 26, 2013, after Ms. Grice's arrest on March 28, 2013, and prior to the formal charges filed against her on June 24, 2013, the trial court "conducted" the custody hearing that had been originally fixed in response to Mr. Ardoin's February 26, 2013 civil petition, docket 73,955-A. The minute entry of the "hearing" stated that Mr. Aucoin was the only person present, and no evidence was taken. Ms. Grice was not present as she had not been served and had no knowledge of the "hearing."[12] According to court minutes, at the April 26, 2013 "hearing," the trial court ordered that the March 26, 2013 "custody order previously signed is to remain in effect." No formal judgment can be found in the record.

Ms. Grice and her sister finally appeared for arraignment on the charge of attempted kidnapping on January 23, 2014. The minute entry in that case reflects

---

[11]Ms. Grice's attorney, in his closing statement, verified that he, too, told Ms. Grice not to initiate any custody proceedings until all criminal charges were disposed of. He also stated in closing argument that Ms. Grice had been warned by someone in the district attorney's office not to contact I.A., Mr. Ardoin, or Ms. Jack, and to stay away from all of them. In fact, even after her custody suit was filed in Evangeline Parish, on February 27, 2015, Ms. Grice was again arrested and jailed in Evangeline Parish when she came to court seeking custody of I.A. The statement by counsel was received without objection

[12]The record and the supplemental record on appeal do not reflect that any notice or service of this hearing was ever perfected on Ms. Grice and she claimed that she had absolutely no knowledge of this "hearing."

only that the State moved "to refer this matter to the Pre-Trial Intervention Program[,]" which was granted by the trial court.[13]

Following the completion of her pre-trial diversion program and in accordance with her attorney's advice, Ms. Grice was finally able to file her petition for custody of I.A. on February 27, 2015 in civil docket number 75,327-B. After several continuances, the trial was eventually set for May 29, 2015.

The supplemental service information submitted to this court indicates that despite six attempts, the process server was unable to locate Mr. Ardoin and perfect service for the hearing scheduled for March 27, 2015. The April 24, 2015, re-fixing date was once again continued to May 29, 2015, based on the inability of Ms. Grice to perfect service on Mr. Ardoin. The record in Ms. Grice's case, docket number 75,327-B, indicates that she requested and received permission from the trial court on May 11, 2015, to appoint a private process server, who finally succeeded on May 16, 2015, in serving Mr. Ardoin with Ms. Grice's petition and notice of the hearing scheduled for May 29, 2015. The process server located Mr. Ardoin in the Pine Prairie Correctional Center, in Pine Prairie, Louisiana.[14] He appeared at that hearing.

On May 26, 2015, just prior to the custody hearing scheduled for May 29, 2015, Ms. Grice learned that Mr. Ardoin was in custody and her attorney filed a

_____

[13]The documents submitted into evidence at the custody hearing on July 27, 2015, as "I.A.-2 in globo[,]" were bills of information, and minutes on Attempted Simple Kidnapping. The record does not indicate when Ms. Grice actually completed her pre-trial intervention program, as those records were not available to the trial court at the custody hearing on July 27, 2015.

[14]The record does contain an exhibit submitted into evidence at the July 27, 2015 custody hearing giving the details of a June 24, 2015 probation revocation hearing wherein Mr. Ardoin's three-year supervised probation for illegal possession of stolen things was revoked, and the original three year suspended sentence was imposed. Apparently, Mr. Ardoin had been incarcerated at the Pine Prairie Correctional Center pending that revocation hearing. (See Footnote Fifteen.)

9

"Petition For Writ of Habeas Corpus" in her civil custody case, docket number 75,327-B, seeking custody of I.A. based on Mr. Ardoin's incarceration and her belief that I.A. was unlawfully in the custody of Ms. Jack, who allegedly had no right or authority over the minor child. The petition for habeas corpus was also fixed for hearing on May 29, 2015. Service was requested on both Mr. Ardoin and Ms. Jack.

In the meantime, on May 14, 2014, while I.A. was living with Mr. Ardoin and Ms. Jack, Mr. Ardoin plead guilty to a charge of "ILLEGAL POSSESSION OF STOLEN THINGS $500 OR MORE BUT LESS THAN $1, 500," in exchange for the dismissal of the charges of "DISTRIBUTION OR POSSESSION WITH INTENT TO DISTRIBUTE A SCHEDULE II CONTROLLED DANGEROUS SUBSTANCE[.]" Mr. Ardoin was sentenced to three years hard labor, suspended, and placed on three years active supervised probation.[15] Mr. Ardoin's probation was revoked on June 24, 2015, and he was ordered to serve three years in prison.

As a result, of Mr. Ardoin's arrest, and prior to the hearing set for May 29, 2015, in Ms. Grice's custody case, docket number 75,327-B, the trial judge in docket number 73,955-A signed yet another ex parte custody order on **May 5, 2015**, in the pending civil case that had been filed by Mr. Ardoin on February 26, 2013, this in spite of the fact that Ms. Jack, Mr. Ardoin, and Mr. Aucoin knew that that Ms. Grice had filed for custody in Division B, docket number 75, 327-B. Once again, the "Order Granting Custody" is captioned "STATE OF LOUISIANA IN THE MATTER OF I.A. D.O.B. 03-19-07[,]" "CIVIL DOCKET NO: 73,955-A[.]" The May 5, 2015 ex parte custody order was signed several months after Ms.

---

[15]Documents were submitted into evidence at the custody hearing on July 27, 2015, as "Mover Grice-1 in globo, "Revocation minutes and Minutes of Conviction in 98017-FB[.]"

Grice had filed for custody in docket number 73,325-B. In signing the order, the trial court continued to use the term "ward of the court," for its justification to issue the order, though it is clear that neither the DCFS nor the district attorney had been notified, and that this case had definitely not been initiated as a juvenile jurisdiction case by either the district attorney or DCFS based on abandonment or abuse and neglect pursuant to the Louisiana Children's Code.

The minute entry of the May 5, 2015 ex parte custody order states that present before the court were Ms. Jack, in proper person, and Mr. Ardoin, whose attorney was not present. Neither Ms. Grice nor her counsel was present and once again no evidence of an amended petition, a motion, and order, or proof of service on Ms. Grice of the May 5, 2015 "hearing," or notice to her attorney, is contained in either the record or supplemental record on appeal.

Nevertheless, the trial court issued the ex parte order in the original Alex Ardoin case, docket number 73,955-A, dated May 5, 2015, continuing I.A.'s status as "a ward of the court," but this time awarding sole custody of I.A. to Ms. Juanita Jack, and ordering that I.A. "be kept within the jurisdiction of this Court until further orders of this Court." The trial court awarded sole custody to Ms. Jack despite the lack of any petition filed on her behalf seeking custody of I.A. or any request that a custody hearing for I.A. be fixed. The record shows that a copy was "hand given in open court to J Jack[.]"

At the custody hearing set for May 29, 2015, in Ms. Grice's case, docket number 75,327-B, the trial judge in Division B, instead of conducting the hearing, orally ordered that the two cases docketed as 73,955-A and 75,327-B be consolidated and that the matter be refixed for July 27, 2015, for a determination of

11

the merits of this case before the trial judge in docket number 73,955-A.[16] Mr. Ardoin was present and was served with notice of that hearing.

In the interim, on July 2, 2015, the trial judge in Mr. Ardoin's case, docket number 73,955-A, also ordered that the two cases be consolidated in Division A, and likewise fixed the custody hearing for July 27, 2015, in Division A.

Finally, there was an actual custody hearing held on July 27, 2015, which resulted in the judgment of July 30, 2015, that is the subject of the appeal in this case. Mr. Ardoin, although properly served, was not present.[17] The record also shows that while there was no service on Ms. Jack prior to the hearing, just prior to the beginning of testimony, the trial court indicated that Ms. Jack was contacted and was "on the way to Court."

When Ms. Jack arrived at the custody hearing, the trial court stated for the record that Ms. Jack **presently had both legal and physical custody of I.A. by virtue of its May 5, 2015 ex parte custody order.** Although Ms. Jack was unrepresented by counsel, she stated on the record that she objected to Ms. Grice's custody of I.A. and wished to go forward with the custody proceedings. At this point in the proceedings, Ms. Jack had never filed a petition for custody and was not lawfully made a party in either of the consolidated cases, despite having been awarded "custody" of I.A. by ex parte order on May 5, 2015.

---

[16]The "Order of Consolidation" was not signed by the trial court in docket number 75,327-B, until July 23, 2015.

[17]Ms. Grice had sought and the trial court ordered that Mr. Ardoin be transported to the custody hearing from the Evangeline Parish Correctional Center, Ville Platte, Louisiana. The transcript of the hearing indicates confusion in the transfer process, which prevented Mr. Ardoin's attendance at the custody hearing. Mr. Aucoin was also absent from the custody proceedings. Apparently, Mr. Ardoin had been transferred to another prison facility and the order of transport was not served.

After a relatively brief and somewhat unorthodox hearing, the trial court took the matter under advisement and, for written reasons assigned, granted sole custody of I.A. to Ms. Jack.[18] The trial court suspended Mr. Ardoin's visitation with I.A. during his incarceration and ordered that he must petition the court for visitation of I.A. after his release. It is from the judgment signed pursuant to the trial judge's written reasons that Ms. Grice has timely appealed. Mr. Ardoin has not appealed and the judgment suspending his visitation is final as to him.

## LAW AND DISCUSSION

### *Standard of Review*

The Louisiana Supreme Court in *Evans*, 708 So.2d at 735, states that a de novo standard of review is applicable when an appellate court finds that the trial court has committed legal errors which have materially affected the outcome of the litigation and have deprived a party of substantial rights:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds*, 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied*, 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006. When such a prejudicial error of law skews the trial

---

[18]The trial court set up an elaborate visitation scheme for Ms. Grice, which included supervised visitation with I.A., either by Ms. Jack at her home in Mamou, Louisiana or at the home of Ms. Allen at her home in Lake Charles. There were additional provisions made in the order for holiday visitation and summer vacation.

court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. *Lasha*, 625 So.2d at 1006.

In the appeal before us, we find that the application of a de novo standard of review is required based on the legal errors by the trial court in signing ex parte custody orders on March 26, 2013, granting custody of I.A. to Mr. Ardoin and on May 5, 2015, placing custody of I.A. with Ms. Jack, and in wrongfully placing the burden of proof on the mother at the eventual custody trial.

***Failure to Effect Proper Service of Notice in Docket Number 73,955-A***

Louisiana Code of Civil Procedure Article 1232 provides that, "Personal service is made when a proper officer tenders the citation or other process to the person to be served."

Louisiana Code of Civil Procedure Article 6 provides, in pertinent part:

A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:

(1) The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201.

Louisiana Code of Civil Procedure Article 1201(A) (emphasis added) provides that, "Citation and service thereof are essential in all civil actions except summary and executory proceedings, divorce actions under Civil Code Article 102, and proceedings under the Children's Code. **Without them all proceedings are absolutely null.**"

The record and the supplemental record on appeal in the custody suit filed on February 26, 2013, by Mr. Ardoin under civil docket number 73,955-A verify that this case was a civil custody case and not subject to the Children's Code,

14

despite the caption of the ex parte orders issued on March 26, 2013, and May 5, 2015. The record and supplemental record clearly demonstrate that Ms. Grice was not present at any of the proceedings in the case filed by Mr. Ardoin in docket number 73,955-A, nor was she represented by counsel. The record and the supplemental record further demonstrate that from the beginning of Mr. Ardoin's quest to gain custody of I.A., starting with his February 26, 2013, civil petition, and prior to the eventual consolidation with Ms. Grice's petition for custody, Ms. Grice never received service of the petition or notice of any of the subsequent proceedings, including the ex parte orders issued on March 26, 2013, and May 5, 2015.

In addition to the ex parte custody order issued on March 26, 2013, granting sole custody of the minor child I.A. to Mr. Ardoin, the record includes two minute entries of "custody hearings" held on April 26, 2013 and May 5, 2015, granting custody to Mr. Ardoin and Ms. Jack respectively. Neither the record nor the minute entries show that the trial court found that proper service had been made on Ms. Grice prior to these two "custody hearings." The minute entry of April 26, 2013, indicates that the only person present was "Gilbert J. Aucoin[.]" The minute entry of May 5, 2015, indicates:

> The mover Juanita Jack was present in Proper Person, the plaintiff [Mr. Ardoin] was present and was not represented by counsel, and the defendant [Ms. Grice] was not present and not represented by counsel. The testimony of Alex J. Ardoin and Juanita Jack was heard. Order was read and signed.

Our review of the record and supplemental record shows that Ms. Grice was never properly served with notice of any of the proceedings. We find that counsel, Mr. Aucoin, Mr. Ardoin, and Ms. Jack submitted those orders ex parte directly to the

15

judge without any type of notice being furnished or served on Ms. Grice or her attorney.

Accordingly, the trial court lacked personal jurisdiction over Ms. Grice when it issued its ex parte orders. This conclusion is based on the record and supplemental record before this court and the requirement of La.Code Civ.P. art. 1201(A) that, "Citation and service thereof are essential in all civil actions" and "without them all proceedings are absolutely null." Therefore, all orders and proceedings taking place in the suit styled "Alex Ardoin v. Jasmine Grice, docket number 73,955-A" prior to the consolidation with Ms. Grice's custody suit, docket number 75,327-B, are absolutely null. *See Jones v. Jones*, 98-1052 (La.App. 3 Cir. 10/28/98), 721 So.2d 540.

### *Ex Parte Orders Issued in Violation of La.Code Civ.P. Art. 3945 in Docket Number 73,955-A*

Louisiana Code Civil Procedure Article 3945 (emphasis added) governs the request for a trial court to issue an ex parte custody order and provides in pertinent part:

> A. The injunctive relief afforded either party to an action for divorce or other proceeding which includes a provision for the temporary custody of a minor child shall be governed by the additional provisions of this Article.
>
> B. An ex parte order of temporary custody of a minor child **shall not be granted unless**:
>
> (1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
>
> (2) The applicant's attorney certifies to the court, in writing, either:

16

(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.

(b) The reasons supporting his claim that notice should not be required.

. . . .

E. Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is **null and void.**

The record before this court does not indicate that any of the aforementioned mandatory provisions of La.Code Civ.P. art. 3945 were met. The record and supplemental record reflect that the civil petition filed by Mr. Ardoin on February 26, 2013 was unverified. There is no certification in writing to the trial court by Mr. Aucoin that any effort was made to notify Ms. Grice of the date and time the order was presented to the court, or to give supporting reasons why notice to Ms. Grice "should not be required." La.Code Civ.P. art. 3945(2)(b). The lack of compliance with the mandatory provisions of La.Code Civ.P. art. 3945 rendered the March 26, 2013, ex parte custody order of temporary custody of I.A. to Mr. Ardoin "not enforceable" and "null and void." La.Code Civ.P. art. 3945(E).

Likewise, there is no indication in the record that Ms. Grice was aware of the March 26, 2013 ex parte custody order granting sole custody of I.A. to Mr. Ardoin. This conclusion is supported by her testimony at the custody hearing held on July 27, 2015, that she had no notice of the March 26, 2013 ex parte custody order, and no notice of the subsequent proceeding held April 26, 2013, which provided that the ex parte March 26, 2013 order was to remain in effect, maintaining I.A. as "a ward of the court" and continuing sole custody of I.A. with Mr. Ardoin.

17

The March 26, 2013 ex parte custody order issued by the trial court and continued in effect at the "hearing" held on April 26, 2013, as well as the additional ex parte custody order issued on May 5, 2015, was not in compliance with the provisions of La.Code Civ.P. art 3945.

Therefore, for the additional reasons that the provisions of La.Code Civ.P. art. 3945(E) were not followed, all orders and proceedings contained within the record of docket number 73,955-A, prior to its consolidation with docket number 75,327-B, on July 2, 2015, were and are "not enforceable," and are considered "null and void." *Id.*

***The Ex Parte March 26, 2013 Order in Docket Number 73,955-A, Maintained On April 26, 2013, and the Ex Parte Custody Order Dated May 5, 2015, Were in Contravention of the Louisiana Children's Code, as There Were No Valid Proceedings Invoking the Court's Juvenile Jurisdiction***

The March 26, 2013 ex parte custody order, although entitled, "STATE IN THE INTEREST OF I.A.[,]" was not initiated by the State as required by the provisions of the La.Ch.Code art. 308. This court could find no authority for the trial court to execute an ex parte order making I.A. "a ward of the court," granting sole custody of the minor child to Mr. Ardoin, and maintaining jurisdiction based on an unverified civil petition for custody filed by the attorney of the alleged biological father. As previously stated, although the March 26, 2013 ex parte custody order appeared to be made on behalf of the State of Louisiana, the docket number is identical to the docket number of Mr. Ardoin's unverified civil petition for custody of I.A.

Aside from the pending civil proceeding, proceedings for removing custody of a child from a mother in a juvenile court proceeding must be conducted in accordance with the Louisiana Children's Code, under the direction of the DCFS,

18

and are subject to strictly enforced provisions, including La.Ch.Code art. 619(A)(1), which states, in pertinent part:

> A peace officer, district attorney, or employee of the local child protection unit of the department may file a verified complaint alleging facts showing that there are reasonable grounds to believe that the child is in need of care and that emergency removal or the implementation of a safety plan is necessary to secure the child's protection.

It is clear from the record that Mr. Aucoin was not acting on behalf of any of the state entities mentioned, despite the caption which intimated that the request for custody was being brought on behalf of the State of Louisiana. The promulgation of the Louisiana Children's Code, effective January 1, 1992, superseded any previous provisions, if indeed any existed, for a trial court to take a child into its custody as "a ward of the court." The Children's Code specifically provides for all proper legal procedures for a child who might need the court's protection in a **child abandonment** or abuse and neglect proceeding.[19]

The March 26, 2013 ex parte custody order was based on an unverified civil petition filed by Mr. Aucoin, and it was an error of law for the March 26, 2013, April 26, 2013, and May 5, 2015 orders to issue ex parte in violation of the specific provisions of the Louisiana Children's Code. Therefore, for these additional reasons, the March 26, 2013 ex parte custody order, the April 26, 2013 ex parte custody order, and the May 5, 2015 ex parte custody order are null and void and are vacated.

---

[19]The district attorney normally would file such a petition in the event that a child was alleged to have been abused, neglected, or abandoned. Pursuant to a detailed set of rules and regulations, the DCFS would investigate such a complaint and the matter would be handled in accordance with juvenile court proceedings, which would then have exclusive jurisdiction until completed, whereupon the matter could be transferred to the regular civil custody docket. See La.Ch.Code art. 308, which provides the authority of the trial court to refer a child for possible abuse and or neglect. That procedure was not followed in this case.

### The Custody Trial on July 27, 2015

We now turn our attention to Ms. Grice's petition for custody against Mr. Ardoin, trial court docket number 75,327-B consolidated on July 23, 2015, with docket 73,955-A. Ms. Grice raises two errors on appeal of the trial court's eventual judgment.

In her first assignment of error, Ms. Grice claims the trial court erred in "failing to conduct the two-pronged test required" before denying Ms. Grice custody, and placing I.A. in the custody of Ms. Jack, a nonparent. In her second assignment of error, Ms. Grice asserts that the trial court erred in placing I.A. in the sole custody of a nonparent, Ms. Jack, who was not a party to the custody suit between Mr. Ardoin and Ms. Grice.

We first note that it is undisputed that Ms. Jack never formally petitioned the trial court for custody of I.A. or answered Ms. Grice's petition for custody. The May 5, 2015 ex parte custody order awarding sole custody of I.A. to Ms. Jack has been declared null and void and vacated. We will pretermit a discussion of whether Ms. Jack had a right of action to ask for custody and decide the case on the merits.[20]

### Custody to Mr. Ardoin

It is undisputed that Mr. Ardoin is presently incarcerated and has been incarcerated since approximately May, 2015. The portion of the judgment of the trial court suspending Mr. Ardoin's visitation with I.A. during his period of incarceration, and ordering that he "will have to petition the court as to any visitation with the said minor child[,]" has not been appealed and we agree with the

---

[20]Ms. Jack had been made a party to the writ of habeas corpus in docket number 75, 327-B filed on May 26, 2015. There was no service information in the record on this writ. Ms. Jack did appear at the eventual custody trial and testified.

trial court as to Mr. Ardoin's loss of custody and of loss of visitation while he remains incarcerated.[21]

*Custody Dispute Between a Parent and Nonparent*

The ultimate result of the nullification of the ex parte custody orders is that when this case went to trial on July 27, 2015, it became a civil custody suit between Mr. Ardoin, who was then a jailed convicted felon, Ms. Jack, who was not an actual party to the litigation, and Ms. Grice. The fundamental error in this case was that the trial judge proceeded as if Ms. Grice had abandoned the child, that Ms. Jack had lawful custody, and that Ms. Grice had the burden of showing that continued custody of I.A. by Ms. Jack was detrimental to the child's interest.

The Louisiana Civil Code, provides that a trial court in an initial custody hearing, here involving a parent and a nonparent, must begin the analysis with La.Civ.Code art. 131, which provides, in pertinent part, that "the court shall award custody of a child in accordance with the best interest of the child."

Louisiana Civil Code Article 133 then provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

The Revision Comments – 1993, Section (b) provide in pertinent part:

> The requirement of proof that parental custody would result in "substantial harm" to the child that is stated in this Article represents a change in the terminology of the test for divestiture of parental custody. The new language, which is not entirely new to Louisiana law . . . has been adopted because it represents an efficient means of giving effect to a parent's paramount right to custody of his child as against any nonparent. The primacy of that parental right was

---

[21]At the time of the custody hearing on July 27, 2015, and the issuance of the judgment on July 30, 2015, the custody of I.A. had been granted to Ms. Jack in the May 5, 2015 ex parte custody order which we have vacated.

21

recognized by the Louisiana jurisprudence long before it was given effect by the legislature in 1982. . . . However, it is clear that the heart of the parental primacy concept, the rule that a nonparent always bears the burden of proof in a custody contest with a parent, was not disturbed by the prior statutory enactment, and likewise has not been affected by this revision.

The importance of a parent's paramount right to custody of her child is long recognized in Louisiana jurisprudence. In a concurring opinion in *State v. Peniston*, 235 La. 579, 105 So.2d 228 (1958), the late Justice Tate highlighted the importance of this right:

> The right of a parent to his child existed before governments or other social institutions of mankind. This natural right proceeds from our Creator and exists independently of the state; the state ... does not in my humble opinion possess the power to take away in favor of a stranger the God-given right of a parent to his child, in the absence of the parent's forfeiture or abandonment of such right or of positive detriment to the child.

*Id.* at 232.

As to the "two-pronged burden" mentioned in Assignment of Error Number One, a panel of this court explained in *Whitman v. Williams*, 08-1133, p. 2 (La.App. 3 Cir. 2/4/09), 6 So.3d 852, 853:

> [T]he "concept of parental primacy is well established in Louisiana law" and that a nonparent is "required to make a very strong showing before custody should be awarded in their favor." *Wilson v. Paul*, 08-382, p. 2 (La.App. 3 Cir. 10/1/08), 997 So.2d 572, 574. Furthermore, "[i]n a conflict between parents and nonparents, the parent enjoys the paramount right to custody of a child, and may be deprived of such right only for compelling reasons." *Id.* (quoting *Tennessee v. Campbell*, 28,823, p. 6 (La.App. 2 Cir. 10/30/96), 682 So.2d 1274, 1278). **As such, the nonparent bears the burden of proving that "granting custody to the parent would be detrimental to the child, and that the best interest of the child requires an award of custody to the nonparent."** *Id.* (quoting *Tennessee*, 682 So.2d at 1278).

(Emphasis added.) *See also Le Blanc v. Guillory*, 10-164 (La.App. 3 Cir. 5/5/10), 38 So.3d 490, and *Gill v. Bennett*, 11-866 (La.App. 3 Cir. 12/7/11), 82 So. 3d 383, *writ denied*, 12-416 (La. 3/7/12), 83 So.3d 1048.

It is undisputed that I.A. lived the first six years of her life with her mother and presumptive legal father, Mr. Flowers, in Lake Charles, Louisiana, before the unfortunate circumstances that brought I.A. into the custody of Mr. Ardoin at Ms. Jack's home in Evangeline Parish. The ex parte custody orders in docket number 73, 955-A are without effect for the reasons stated in this opinion. The prior order of the trial court granting custody of I.A. to Ms. Jack dated May 5, 2015, is null and void. Therefore, pursuant to the jurisprudence interpreting La.Civ.Code art. 133, Ms. Jack bore the two-pronged burden of proof at trial to show that "substantial harm would result to the child" if I.A. was returned to the custody of Ms. Grice and that the best interest of the child requires an award of custody to the nonparent. La.Civ.Code art. 133; *see also Whitman*, 6 so.3d 852.

### Assignment of Error Two

There is a division of opinion as to whether there is authority for a nonparent who has not filed an actual petition or become an actual party to the litigation to legally be awarded "custody" under La.Civ.Code art. 133. A panel of this court found in *Miller v. Miller*, 04-1355 (La.App. 3 Cir. 2/2/05), 893 So.2d 233, that it was in the best interest of the child to award the custody of the minor child to the grandmother, a non-party to the custody dispute between the mother and father, based on the discretion accorded the trial court in La.Civ.Code art. 133.

In *Miller*, as well as *Nail v. Clavier*, 99-588 (La.App 3. Cir. 11/10/99), 745 So.2d 1221, *writ denied*, 99-3494 (La. 1/5/00), 752 So.2d 169, this court stated that there is "jurisprudential history for awarding custody to a grandparent who has not

23

petitioned for custody and who is not a party to the suit." *Miller*, 893 So.2d at 235. There were strong dissents filed in both cases. Regardless, the facts in both *Miller* and *Nail* are clearly distinguishable from this case. The trial court and appellate court in both *Miller* and *Nail* found that the best interest of the child was to award the custody of the minor child to a non-party grandparent. However, in both cases, the non-party grandparent was able to meet the heavy burden of proof required under La.Civ.Code art. 133 that granting custody to the parent would be detrimental to the child. The dissent in both cases argued forcefully that in order for the court to even consider granting custody to a non-party grandparent, the grandparent must first be made an actual party to the litigation. Because of our decision to award custody to Ms. Grice on the merits in this case, we need not decide that issue.

### *The Merits — The Nonparent's Burden and the "Best Interest" of the Child*

A review of the record shows that the trial court focused much of its questioning on whether Ms. Grice had seen the child in the previous two years. The judge was relying on the inappropriate ex parte orders granting custody first to Mr. Ardoin and then to Ms. Jack, treating those orders as lawful custody orders. We have found they are not and have vacated those orders. The trial court then required Ms. Grice to bear the burden of showing a change of circumstances warranted a "change" in custody, and that it would be detrimental to the child to maintain custody with Ms. Jack. We likewise found this to be an error of law. The burden properly remained on Ms. Jack.

In its questioning of Ms. Grice and in the trial court's comments at trial, the trial judge expressed irritability that Ms. Grice had failed to file civil custody proceedings, or answer those filed by Mr. Ardoin, for over two years from the date

I.A. was removed from her custody. The trial judge seemed not to focus on the uncontroverted fact that Ms. Grice had been arrested and prosecuted by the Evangeline Parish authorities when she did try to obtain custody of I.A., and likewise did not mention that, even after the criminal case was in pre-trial diversion, she was arrested yet again.

We are mindful that in *Tracie F. v. Francisco D.*, 15-1812 (La.3/15/16), __ So.3d___, the supreme court specifically held:

> For the reasons discussed in this opinion, we are especially guided by La. C.C. art. 131 and the legislative comments to its revision, and we hold that the overarching inquiry in an action to change custody is "the best interest of the child." Moreover, consistent with our prior jurisprudence regarding stipulated custody awards, we further hold that a biological parent with joint custody, who seeks modification of a stipulated custody award to obtain greater custodial rights, must prove: 1) there has been a material change in circumstances after the original custody award; and 2) the proposed modification is in the best interest of the child. *See* **Evans v. Lungrin**, 97-0541, 97-0577, p. 13 (La. 2/6/98), 708 So.2d 731, 738; *cf.* **Bergeron v. Bergeron**, 492 So.2d 1193 (La. 1986).

We agree that we must apply the "best interest" standard in deciding this case. However, in *Tracie F.* there was a prior stipulated custody award in favor of the non-party grandmother. The parent sought to modify that judgment and become the "domiciliary parent."

This case does not involve a proposed "modification" of a prior original custody award, stipulated or otherwise. As we pointed out at length in this opinion, neither Mr. Ardoin nor Ms. Jack had ever obtained a lawful custody order. Hence, this case should have proceeded to trial as an initial custody dispute between Ms. Grice and a non-party alleged paternal grandmother, Ms. Jack. The burden of proof, under La.Civ.Code arts. 131 and 133, then remained on Ms. Jack, and the trial court committed legal error by shifting the burden to Ms. Grice.

25

The record of the custody hearing held on July 27, 2015, contains absolutely no evidence to support the trial court's ruling that returning I.A. to the custody of her mother "would cause substantial harm to the minor child." On the contrary, we find that the record and supplemental record support the conclusion that Ms. Jack has failed to meet the substantial burden required of her to enable the trial court to allow I.A. to be placed in her legal custody in contravention of the right to custody by the child's natural mother. La.Civ.Code art. 133; *see also Whitman*, 6 So.3d 852.

We further find that under La.Civ.Code art. 131, the best interest of the child requires that I.A. be placed in the lawful custody of her mother. The unrebutted testimony of Ms. Grice was that she had sole custody of her daughter I.A. for the first six years of I.A.'s life. Ms. Grice married Mr. Flowers when she was pregnant with I.A. and has continued to reside with Mr. Flowers in a safe, healthy home environment since I.A.'s birth on March 19, 2007. She and Mr. Flowers have an additional four children. She, Mr. Flowers, and their four children are now living in Houston, Texas, where Mr. Flowers works full time as a manager at Best Buy, a responsible position. Ms. Grice stays home to care for the children. Mr. Flowers also attends college at Texas A & M to become a pharmacist, trying to better himself and elevate his family's living conditions. Ms. Grice testified that their home is adequate for all of their children, including I.A., though she and Mr. Flowers plan on moving to a larger home as soon as I.A. is returned to her custody. She testified that she and I.A. love each other and that I.A.'s siblings miss her, as does Mr. Flowers, the man she knew as her "father."

Ms. Grice's testified that the only reason she did not seek return of I.A. earlier was on the advice of her lawyer after she had been arrested for attempted

simple kidnapping of I.A. when she first attempted to regain custody in 2013. Her testimony was supported by the record. Ms. Grice was arrested on attempted kidnapping charges on March 28, 2013, shortly after she regained her health following surgery. As previously discussed, she had no knowledge of an ex parte custody order issued two days earlier. She testified that she was then warned by someone in the district attorney's office and her then attorney not to go near I.A. or attempt to contact her. Her testimony was that she made repeated calls to her attorneys to help her, but both her former attorney and her present counsel advised that she wait until the criminal proceedings were concluded. Even after the initial charges against her were dismissed pursuant to a pre-trial diversion agreement, when she came to court seeking to regain custody of her daughter, she was arrested again. It is no small wonder that Ms. Grice was afraid to come to Evangeline Parish to try to get her daughter back from Ms. Jack and Mr. Ardoin. She was arrested twice when trying to do so. There is no evidence in the record to contradict Ms. Grice's testimony that she is a fit and proper mother, fully willing and able to care for I.A., just as she did for six years before I.A. was improperly removed from her care.

## CONCLUSION

In summary, there is no evidence whatsoever in the record to support a finding that granting custody to the "parent would result in substantial harm to the child[.]" La.Civ.Code. art. 133. The judgment of the trial court awarding sole custody to Ms. Jack, the paternal grandmother of I.A. and a non-party to this custody dispute, is reversed. The custody of I.A. is granted to her mother, Ms. Jasmine Grice, effective immediately on this judgment becoming final. Ms. Juanita Jack is hereby ordered to transfer custody of I.A. to her mother, Ms.

27

Jasmine Grice, on the date following finality of this judgment. To the extent necessary, a civil warrant may be issued by the trial court authorizing the sheriff of Evangeline Parish to assist Ms. Jasmine Grice in obtaining custody of her daughter, I.A.[22] All costs of all trial court proceedings and of this appeal are assessed to Alex Ardoin. Mr. Ardoin did not appeal. Therefore, the trial court's judgment of July 30, 2015, remains in effect as to the suspension of Mr. Alex Ardoin's visitation of I.A.

**VACATED IN PART, REVERSED, AND RENDERED.**

---

[22]Louisiana Revised Statutes 9:343

28